***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications; therefore, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the deputy commissioner as:
 STIPULATIONS
1. All parties are properly before the undersigned Deputy Commissioner, and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. All the parties have correctly designated, and there is no question as to misjoinder or nonjoinder of the parties.
3. The parties were subject to the Workers' Compensation Act at the time of the alleged injury and/or occupational disease.
4. An employer/employee relationship existed between the parties at the time of the alleged injury and/or occupational disease.
5. Defendant-employer in this case is Barnhill Contracting and the carrier and/or claims administrator liable on the risk is The Travelers.
6. Plaintiff sustained an injury or began missing work from an alleged injury on or about August 15, 2000.
7. Plaintiff's average weekly wage is $631.05 yielding a compensation rate of $420.70.
8. Plaintiff alleges injuries to the left leg, head, back, neck, left shoulder, and left wrist. Defendant-employer has accepted the wrist and head injuries but has denied the remaining injuries.
9. Plaintiff was paid the entire day of the alleged injury and/or onset day of the alleged occupational disease.
10. Plaintiff is still employed by Barnhill Contracting.
11. Documents stipulated into evidence include the following:
Stipulated Exhibit #1: Plaintiff's medical records
Stipulated Exhibit #2: Discovery documents
12. The depositions of Dr. Josephus Th. Bloem, Dr. Robert Martin, and Dr. David Miller are a part of the evidentiary record in this case.
 ***********
Based on the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff was thirty-eight years old at the time of the deputy commissioner hearing in this matter. Plaintiff completed high school.
2. Plaintiff began working for defendant-employer in 1992. Defendant-employer is in the highway construction business and employed plaintiff in roller service. Plaintiff was in charge of filling heavy equipment used in paving with fuel and water.
3. On August 15, 2000, plaintiff was loading a roller onto the low boy that carried it. Plaintiff was driving the roller onto the trailer bed when it tilted over and threw him into a ditch. Plaintiff fell nine to ten feet off the trailer, landed on his left side, and was knocked unconscious.
4. Plaintiff initially went to Nash General Hospital emergency room following his fall where he complained of pain in his neck, wrist, and left leg. Plaintiff was released with a neck brace, pain medications, and instructions to follow up with his own doctor if his pain persisted.
5. At the direction of defendant-employer, plaintiff went to Nash Urgent Care on August 16, 2000, where he complained of pain to his neck, left wrist, shoulder, back, and lower leg pain. Plaintiff underwent exams on his neck, left shoulder, back, left wrist, and lower left leg and was diagnosed with contusions to his scalp, left shoulder and left lower leg, left side cervical strain and left wrist sprain. Plaintiff's x-rays revealed no fractures.
6. Plaintiff initially missed three days of work due to his August 15, 2000 fall at work.
7. After persistent pain and repeat follow-up visits at Nash Urgent Care, plaintiff was referred to Dr. Josephus Th. Bloem at Bloem Orthopaedics. Plaintiff had already been treating with Dr. Bloem a few months prior to his injury at work due to pain from an auto accident in March 2000. As a result of injuries from his auto accident, plaintiff had also received treatment from chiropractor Dr. Mark McKinnon for his back and neck pain and Dr. Guarino for recurrent headaches. Dr. Guarino referred plaintiff to Dr. Bloem in May 2000.
8. While treating with Dr. Bloem, plaintiff underwent a lumbosacral spine MRI on August 10, 2000. Plaintiff's MRI revealed a herniated disc at L3-L4 and some disc bulging at other levels.
9. After his fall at work on August 15, 2000, plaintiff's back and neck pain worsened and he experienced the onset of left shoulder pain. Plaintiff told Dr. Bloem that he was having pain in his neck area, right below his neck. Dr. Bloem stated in his September 27, 2000 office notes that plaintiff complained of pain in his neck, left leg, and left wrist. At this visit, Dr. Bloem diagnosed plaintiff with a sprained left wrist, bruised left tibia and bruised forehead and stated that "he was improving and his back was doing a little better. It seemed that he had aggravated that pre-existing condition." Dr. Bloem is the only doctor that treated plaintiff after his March auto accident and both before and after his August on-the-job injury.
10. In Dr. Bloem's opinion, plaintiff's fall from the roller at work on August 15, 2000 aggravated his pre-existing back condition. Dr. Bloem opined that although sometimes there was a discrepancy between plaintiff's symptoms and physical exam findings, this can be explained by the patient's level of schooling and his anxiety about his injuries. Dr. Bloem believed that plaintiff's major problem immediately after the August 15, 2000 incident was his back, and after that was addressed, plaintiff's focus shifted to his continuing shoulder pain.
11. Dr. Bloem opined that plaintiff's shoulder condition had already healed prior to his August 15, 2000 fall at work and that the injuries to his wrist and arm were caused by this fall. Dr. Bloem further opines that the August 15, 2000 fall at work aggravated or exacerbated his pre-existing left shoulder symptoms.
12. Dr. Bloem became frustrated with plaintiff as he was unable to pinpoint the exact source of his continuing pain. Dr. Bloem attributed plaintiff's pain reporting failure to plaintiff's lack of education, and said that this kind of difficulty, otherwise described as post trauma anxiety, is common in persons with limited education.
13. In October 2000, another MRI was performed on plaintiff's back. Dr. Miller interpreted the MRI results as showing joint enlargement of the facet joint at the L3-4 region, L4-5, and L5-S1 area. Plaintiff's MRI did not indicate any fractures, broken bones, dislocations, or significant disc herniations at the time.
14. In December 2000, plaintiff treated with Dr. David C. Miller for treatment of his continuing back, neck, and shoulder pain. Dr. Miller's findings regarding plaintiffs' MRI were different than those of Dr. Fritz, the radiologist who interpreted plaintiff's MRI of August 10, 2000, in that Dr. Fritz made references to a "herniation", while Dr. Miller described a "bulge". Dr. Miller interprets MRI films himself since he is familiar with the patient's complaints and thereby has a "context" to put the results into. Dr. Miller also found impingement to the left shoulder and subsequently referred plaintiff to Dr. Martin for the care of his shoulder.
15. In July 2001, Dr. Miller conducted a discogram on plaintiff's lower back. Dr. Miller's findings showed that there were positive responses at the L3-4 level and the L4-5 levels. Dr. Miller opined that plaintiff's complaints about his back and neck were compatible with the injuries he suffered in the March 2000 auto accident and that it would be logical to conclude that plaintiff's subsequent fall at work on August 15, 2000 aggravated any pre-existing pain in his back and shoulder that originally stemmed from the auto accident. Dr. Miller could not state with specificity the extent to which the subsequent August 15, 2000 fall aggravated plaintiff's back and shoulder injuries and therefore deferred to Dr. Bloem, whom he thought would be best suited to make that determination, since he treated plaintiff after the auto accident and after the fall at work.
16. Dr. Miller's prognosis for plaintiff as of January 15, 2002 was that since plaintiff has not undergone the recommended surgical treatment of a spinal fusion, his prognosis is guarded and plaintiff will most likely continue to have the same back pain. In plaintiff's case, the only remaining option is surgery since injections, medications, and physical therapy have all been unsuccessful. If plaintiff does not undergo surgical treatment, Dr. Miller would assign to plaintiff's two-level disc injury a permanent partial impairment rating of 15% to the spine. Dr. Miller opined that plaintiff was an accurate historian being somewhat limited by his lack of education. Dr. Miller deferred to Dr. Robert C. Martin's opinions regarding plaintiff's shoulder injury.
17. Dr. Martin initially saw plaintiff in February 2001 and conducted a detailed evaluation of plaintiff's neck and shoulder area, finding that plaintiff had sustained injury to his shoulder, possibly in more than one place. Dr. Martin recommended plaintiff undergo left shoulder arthroscopy procedure which he performed on March 19, 2001 in order to further diagnose and treat plaintiff's left shoulder. Plaintiff's left shoulder arthroscopy revealed that plaintiff had a superior glenoid labral tear which was a tear of the labral structure in the shoulder, a partial thickness rotator cuff tear, and impingement syndrome.
18. As a result of the left shoulder athroscopy surgery, plaintiff missed three weeks of work after March 19, 2001, returning to work on April 9, 2001. Plaintiff has been on light duty restrictions from March 26, 2001 continuing through the present date.
19. At plaintiff's September 10, 2001 visit, Dr. Martin noted that there was still soreness in plaintiff's shoulder, but it seemed to be limited to the acromioclavicular joint area. Thereafter, Dr. Martin injected the joint to see if any relief would occur and to narrow down the reason for plaintiff's continued pain.
20. By his October 2001 visit with Dr. Martin, the injection had decreased plaintiff's pain in the AC joint area by 30-40%, but plaintiff still had pain in his arm. At that point, Dr. Martin explored the possibility of carpal tunnel syndrome in plaintiff's left wrist and referred plaintiff back to Dr. Miller for evaluation of his C-5 radiculopathy.
21. Dr. Martin opined that plaintiff had a definite change in his shoulder function and sustained an exacerbation of his shoulder injury as a result of his August 15, 2000 fall at work. Dr. Martin diagnosed plaintiff with a labral tear and stated that injury to the labrum most commonly causes symptoms including pain and that more likely than not, plaintiff's labral tear would have caused him pain. Dr. Martin further opined that because plaintiff did not complain of pain in the left shoulder on August 3, 2000, it was more likely than not due to the fact that plaintiff did not yet have a labral tear.
22. Dr. Martin had no reason to doubt the accuracy of the information given by plaintiff, and based upon that information, he felt that plaintiff was definitely injured as the result of his fall at work on August 15, 2000. Plaintiff has not reached maximum medical improvement and is still being treated by both Dr. Martin and Dr. Miller.
23. The credible medical evidence in the record shows that to the extent plaintiff had pre-existing conditions of his back and/or left shoulder, his August 15, 2000 fall at work aggravated or exacerbated said conditions, therefore making them compensable workers' compensation injuries.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On August 15, 2000, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer, resulting in injuries to his back and neck, left wrist, and left shoulder. N.C. Gen. Stat. § 97-2(6).
2. As a result of his injury by accident of August 15, 2000, plaintiff is entitled to temporary total disability payments for three days following the compensable injury and from March 19, 2001, the date of his shoulder surgery, until April 9, 2001, payable by defendants at the rate of $420.70 per week. N.C. Gen. Stat. § 97-29.
3. The medical treatment provided to plaintiff was reasonable and necessary to effect a cure, give relief, or lessen plaintiff's period of disability and he is entitled to payment by defendants of all medical expenses resulting from the same, including payment for the left shoulder arthroscopy of March 2001. N.C. Gen. Stat. § 97-25.
4. Plaintiff has presented competent medical testimony stating that future surgery would relieve a substantial amount of the pain he suffers in his back and shoulder. Therefore, plaintiff is entitled to receive all reasonable and necessary medical care pursuant to N.C. Gen. Stat. §97-25 associated with this surgery. Said care shall expressly include that which has been rendered at the direction or referral of Dr. Robert C. Martin and Dr. David C. Miller. Dr. Miller is accordingly named as plaintiff's treating physician. The treatment recommended at this time includes a two level fusion at the L3-4 and L4-5 spine levels, studies to the cervical spine to eliminate potential causes of plaintiff's continuing shoulder pain, and an operation to plaintiff's abnormal AC joint. N.C. Gen. Stat. § 97-25.
5.Any issues regarding permanent partial impairment or benefits following as a result thereof are hereby reserved for future proceedings.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission AFFIRMS the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation at the rate of $420.70 per week for the three days following the injury by accident of August 15, 2000 and from March 19, 2001 to April 9, 2001. The amounts that have accrued shall be paid in one lump sum, subject to attorney's fees awarded herein.
2. Defendants shall pay for and provide all reasonable and necessary medical care including future treatment and treatment already rendered pursuant to N.C. Gen. Stat. § 97-25, including that care rendered or provided at the direction of Dr. Robert C. Martin and Dr. David C. Miller. Dr. Miller is hereby designated as plaintiff's treating physician.
3. Any issues regarding benefits for permanent partial impairment are reserved for future proceedings, as plaintiff has not yet reached maximum medical improvement.
4. Plaintiff's counsel is entitled to a reasonable attorney's fees in the amount of twenty-five percent (25%) of the sums due plaintiff under Paragraph 1 of this AWARD, plus twenty-five percent (25%) of any future compensation that plaintiff may receive, for so long as plaintiff's counsel represents him in this matter. Said sums shall be deducted from the benefits due plaintiff and paid directly to plaintiff's counsel.
5. Defendants shall pay the costs.
This the ___ day of July 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/____________ THOMAS J BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER